COPY

1  WILLIAM G. MALCOLM #129271
2  DON ROBINSON #123411
   DAMIAN P. RICHARD  #262805
   MALCOLM ♦ CISNEROS
3  2112 Business Center Drive
   2nd Floor
4  Irvine, California 92612
   Telephone:    (949) 252-9400
5  Telecopier:    (949) 252-1032
   bill@mclaw.org
6
7  Counsel for ONEWEST BANK, F.S.B.,
   successor in interest to IndyMac Federal
   Bank, F.S.B.
8
9            UNITED STATES DISTRICT COURT
10       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

FILED
CLERK, U.S. DISTRICT COURT
JAN 11 2011
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| MARIA   ANTONIA   RAFAEL,   an individual,<br><br>                     Plaintiff,<br><br>vs.<br><br>ONE WEST BANK, FSB, successor in interest to IndyMac Federal Bank, FSB; WESTLEND FINANCIAL INC., DBA AMERICAN CAPITAL FUNDING, a California Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a corporation; MTC Financial Inc. dba Trustee Corps, as trustees; CARNELL RODGERS, an individual, dba CRA, INC. dba CARNELL RODGERS & ASSOCIATES; FERNANDO F. TORIBO, an individual; and DOES 1 through 10, inclusive,<br><br>                     Defendants. | Case No.<br><br>**CV11·00301** PGK(Ex)<br><br>**NOTICE OF REMOVAL**<br><br><br><br><br>*Removal Filed: January 11, 2011*<br>*State Action Filed: December 6, 2010*<br>*Los Angeles Case #: PC049761* |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

    **PLEASE TAKE NOTICE** that Defendant ONEWEST BANK, F.S.B, successor in

interest to IndyMac Federal Bank, FSB. ("ONEWEST BANK, F.S.B." or "OWB"), does hereby

remove to this Court the State court action described herein.

///

1.     On December 6, 2010, an action was commenced in the Superior Court of California, Los Angeles County, entitled *Rafael v. OneWest Bank, FSB, et al. .,* Case No.: PC049761. A copy of the Complaint is attached hereto as Exhibit "A".

2.     On or about January 10, 2011, Defendant, ONEWEST BANK, F.S.B., received notice of the filing of the Complaint in this action.

3.     Upon information and belief, and based upon the public database records of the Los Angeles County Superior Court, as of the date of filing this Notice, no other Defendants have been properly served in this case.

4.     Plaintiff brings claims relating to the foreclosure of the lien of a Deed of Trust encumbering the real property commonly known as 8957 Greenbush  Avenue, Los Angeles, California 91331, APN: 2640-013-011 (the "Subject Property").

5.     Plaintiff brings claims based upon alleged violations of the Real Estate Settlement Procedures Act, (RESPA) 12 U.S.C. § 2601.

6.     Defendants are entitled to remove this action to this Court pursuant to 28 U.S.C. § 1441 on the grounds that this Court has original jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331 because it is an action arising under the laws of the United States, specifically the provisions of RESPA.

7.     This Removal is timely because it has been filed within the shorter of 30 days after receipt by the Defendant through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based or within 30 days after the service of summons upon the Defendant.  See 28 U.S.C. §1446(b).

Defendant has complied with the procedures for removal set forth in 28 U.S.C. §1446. Notice of this Removal is being provided to plaintiff's counsel of record: Samantha C. Harris, Esq. of S.C. Harris Law: 26376 Ruether Avenue, Santa Clarita, California 91350.  Pursuant to §1446(d), a copy of this Notice of Removal will be filed with the Superior Court of the State of California in and for the County of Los Angeles.

///

///

1   WHEREFORE, for the foregoing reasons, Defendant removes this action from the

2   Superior Court of the State of California in and for the County of Los Angeles, to the United

3   States District Court for the Central District of California, and respectfully requests the Court to

4   exercise jurisdiction over this action.

5   Dated: January 11, 2011      MALCOLM ♦ CISNEROS

6

7   By: _Mussam favor for_____

8   DAMIAN P. RICHARD
    Counsel for ONEWEST BANK, F.S.B.,

9   successor in interest to IndyMac Federal Bank, F.S.B.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 'A'

91331  A6018

1   Samantha C. Harris, SBN 170337
    S.C. Harris Law
2   26376 Ruether Ave
    Santa Clarita, California 91350
3   Telephone: (661) 487-1110
    Facsimile: (661) 251-1111
4
5   Attorney for Plaintiff

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles County Superior Court

DEC 06 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
            C. SU

6

7                   SUPERIOR COURT OF CALIFORNIA

8                     COUNTY OF LOS ANGELES

9

10  MARIA ANTONIA RAFAEL, an individual,  )   Case No.:  P C 0 4 9 7 6 1     Filed by FAX

11            Plaintiff                    )   FIRST VERIFIED COMPLAINT FOR:

12                                         )
    v.                                     )       (1) Violation of the Unruh Act, California
13                                         )       Civil Code §51 et seq.
    ONE WEST BANK, FSB, successor in       )       (2) Violation of the Real Estate Settlement
14  interest to IndyMac Federal Bank, FSB; )       Procedures Act, 12 U.S.C. §2601
    WESTLEND FINANCIAL INC., DBA           )       (3) Violation of California Civil Code
15  AMERICAN CAPITAL FUNDING; a            )       §2923.5
    California Corporation; MORTGAGE       )       (4) Predatory Lending Violation of
16  ELECTRONIC REGISTRATION SYSTEMS,       )       California Business and Professions Code
17  INC., a corporation; MTC Financial Inc dba )  §17200 §17500
    Trustee Corps, as trustees; CARNELL    )       (5) Breach of Good Faith Fair Dealing
18  RODGERS, an individual, dba CRA, INC. dba )   (6) Breach of Fiduciary Duty
    CARNELL RODGERS & ASSOCIATES;          )       (7) Unjust Enrichment
19  FERNANDO F. TORIBO, an individual; and )       (8) Negligence Per Se
20  DOES 1 through 10, inclusive,          )       (9) Unconscionability
                                           )       (10) Intentional Infliction Of Emotional
21                                         )       Distress
22            Defendants                   )       (11) Fraud - California Civil Code §1572
                                           )       (12) Wrongful Foreclosure
23                                         )       (13) Declaratory Relief

24

25                                                 **DEMAND FOR TRIAL BY JURY**
                                                   **UNLIMITED JURISDICTION**
26

27  _____

28

-1-

_____
            FIRST VERIFIED COMPLAINT                                    **ORIGINAL**

## JURISDICTION

The transactions and events which are the subject matter of this Complaint all occurred within the County of Los Angeles, State of California.

The Subject Property is located within the County of Los Angeles, State of California. The Subject Property is commonly known as 8957 Greenbush Ave. Los Angeles, California 91331 APN: 2640-013-011 within the County of Los Angeles, State of California.

The legal description of the Subject Property is as follows:

LOT 221 OF TRACT No. 17356, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 418, PAGESS 12 TO 16 OF MAP, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNY. APN: 2640-013-011

## PRELIMINARY STATEMENT

1.    Plaintiff Maria Antonia Rafael is a Hispanic woman of Mexican national origin. Plaintiff is hereafter referred to as "Mrs. Rafael". In 2007 Mrs. Rafael was looking to refinance her mortgage on the home she has been living in with her spouse and their four children for over twenty years.

2.    Mrs. Rafael does not read or speak English. These facts notwithstanding, during the entire process of refinance, Mrs. Rafael was not provided with copies of the loan documents in Spanish. Additionally, all the negotiations were in English.

3.    When the Plaintiff initially purchased her home in 1998, she like millions of other Americans fell victim to the predatory lending practices which have wreaked havoc on the economy of this State as well as the nation.

4.    Some of the patterns and practices running through the predatory lending industry are (a) the practice and pattern of persistently seeking out persons of foreign nationality, (b) the practice and pattern of consistently targeting persons with limited or no English skills, and (c) the pattern and practice of pursuing persons with these characteristics regardless of their suitability for the financing product. These first two factors, among others, contributed to people

-2-

1   taking out loans that they did not know the terms and conditions of and that they did not

2   understand. The third factor-financing a borrower who had a high risk of default did not matter

3   to the predatory lending industry because the lender just immediately sold the stream of income

4   and pocketed the monies from the sale. The mortgage brokers certainly did not qualify

5   borrowers because said brokers charged unconscionable origination fees and all varieties of

6   other fees to the borrower while still raking in the YSP (yield-spread-premium) from the lender.

7        5.      It is within this backdrop that Plaintiff lost her home through foreclosure.

8

9                                      **PARTIES**

10       6.      Mrs. Rafael recently domiciled at the premises commonly known as 8957

11  Greenbush Avenue, Arleta, CA 91331 ("Home").

12       7.      Mrs. Rafael is informed and believes and thereon alleges that Defendant

13  WESTLEND FINANCIAL INC., DBA AMERICAN CAPITAL FUNDING; a California

14  Corporation ("Westlend")is and at all times mentioned herein was, a corporation organized and

15  existing under the laws of the State of California and authorized to transact business in the State

16  of California. Mrs. Rafael is informed and believes and thereon alleges that Westlend Financing

17  dba American Capital ("Westlend") was the lender through which Mrs. Rafael refinanced her

18  home.

19       8.      Plaintiffs are informed and thereon believes and alleges that Defendant TICOR

20  TITLE COMPANY, (hereinafter referred to as "TICOR") is a California Corporation, a

21  Business Entity, form unknown, authorized to do business in the State of California.  TICOR is

22  the original mortgage Trustee under the Deed of Trust (DOT) as evidenced by Exhibit G a true

23  and correct copy of which is attached and incorporated herein as tho set out in full. Defendant,

24  TICOR'S business address is 2510 North Redhill Avenue, Santa Ana, CA 92705 and the Agent

25  for service of process is C T CORPORATION SYSTEM, 818 w 7TH Street, Los Angeles, CA

26  90017.

27       9.      Mrs. Rafael is informed and believes and thereon alleges that Defendant

28  Mortgage Electronic Registration Systems, Inc. ("MERS") is , and at all times mentioned herein

-3-

1  was, a corporation, organized and existing under the laws of the State of Delaware and

2  authorized to transact business in the State of California.

3        10.   Mrs. Rafael is informed and believes and thereon alleges that Defendant Carnell

4  Rodgers is, and at all times mentioned herein was, an individual, licensed as a broker by the

5  State of California, Department of Real Estate, under License ID 01229751, and doing business

6  in the State of California, County of Los Angeles. Mrs. Rafael is further informed and believes

7  and thereon alleges that said Defendant is and at all times mentioned herein was, doing business

8  as Carnell Rodgers & Associates and CRA Inc. Said Defendant is hereinafter referred to,

9  depending upon the particular facts being alleged, as "Rodgers", "Mortgage Broker".

10        11.   Mrs. Rafael is informed and believes and thereon alleges that Defendant Fernando

11  F. Toribo is, and at all times mentioned herein ("Toribo") was, an individual licensed as a

12  salesperson by the State of California, Department of Real Estate, under License ID 01800697

13  residing in the State of California, County of Los Angeles, as an agent of Rodgers.

14        12.   The true names and capacities of defendants Does 1 through 10, inclusive, are

15  unknown to Mrs. Rafael, who therefore sues said defendants by such fictitious names. Mrs.

16  Rafael will amend this complaint to show the true names and capacities of the Doe defendants

17  when the same have been ascertained.

18        13.   Mrs. Rafael is informed and believes and thereon alleges that each of the

19  defendants herein, including those sued herein as Does 1 through 10, inclusive, were and are in

20  some manner responsible for the actions and omissions herein alleged and that, therefore,

21  defendants and each of them are jointly and severally liable for all damage caused to Mrs.

22  Rafael as set forth below.

23                      **FACTUAL ALLEGATIONS**

24        14.   Mrs. Rafael is informed and believes and thereon alleges that, during the entire

25  process of purchasing her Home, she was never given any documents in Spanish. Mrs. Rafael is

26  informed and believes and thereon alleges that this was done by One West Bank, Rodgers, and

27  Toribo to facilitate the sale of the Home to Mrs. Rafael under conditions and terms unknown to

28  her and to, thereby, reap undisclosed monetary gain. Mrs. Rafael is informed and believes and

-4-

1  thereon alleges that any statutes of limitations applicable to the claims stated herein are

2  equitably tolled and that any defendants herein are equitably stopped to raise any statutes of

3  limitations as defense.

4      15.   Mrs. Rafael, refinanced her home for $306.000.00, Westland Financing, Inc., dba

5  American Capital Funding, a California corporation was the lender.

6      16.   Mrs. Rafael is informed and believes and thereon alleges that Rodgers real estate

7  agency, CRA, Inc., purported to represent Mrs. Rafael.

8      17.   Mrs. Rafael is informed and believes and thereon alleges that Toribo filled out a

9  Fannie Mae Loan Application, Form 1003, stating that Mrs. Rafael worked as a Sales Manager

10  at Casa Nueva Insurance Services located at 8323 Reseda Blvd Suite 200A, Northridge, CA

11  91324 and purportedly made a monthly income of $5,650.00. (**Exhibit A**) a true and correct

12  copy of which is attached and incorporated herein as tho set out in full.

13      18.   Mrs. Rafael was never employed by Casa Nueva Insurance Services as noted on

14  memo from Jorge Martinez, Manager of Casa Nueva Insurance Services. (**Exhibit B**) a true and

15  correct copy of which is attached and incorporated herein as tho set out in full; this is direct

16  evidence as to Defendants lack of candor when qualifying Mrs. Rafael for an $308.000.00 loan.

17  Also, as evident in her 2006 gross income taxes Mrs. Rafael's monthly income was a paltry

18  $910.56 a month reflecting a total yearly income of $18,784. (**Exhibit C**) a true and correct

19  copy of which is attached and incorporated herein as tho set out in full. Therefore, Defendants

20  were fully aware that Mrs. Rafael did not earn a monthly income of $5,650.00 as stated on her

21  loan application and was not reasonably capable of paying the required monthly mortgage

22  payment of $2,168.13.

23      19.   Mrs. Rafael is informed and believes and thereon alleges that Toribo drafted that

24  application, signed it as "Interviewer", and set forth that the application information was

25  ascertained in person. Mrs. Rafael was never asked by Toribo what her income was and never

26  knew that Toribo had represented to Westland Financial Inc. a monthly income of $5,650.00

27  (**Exhibit D**) a true and correct copy of which is attached and incorporated herein as tho set out

28  in full.

-5-

FIRST VERIFIED COMPLAINT

20.   Mrs. Rafael is informed and believes and thereon alleges that even though Toribo set forth that the monthly income was from employment as a sales manager, One West Bank failed and neglected to verify the income through balance sheets, income statements, and/or tax returns. This is despite the fact that Westlend Financial Inc. charged Mrs. Rafael $450.00 for underwriting as stated on the Good Faith Estimate dated October 30, 2007 (**Exhibit E**) a true and correct copy of which is attached and incorporated herein as tho set out in full, however, on the Itemization of Amount Financed dated November 30, 2007 the underwriting fee was increased to $495.00 (**Exhibit F**) a true and correct copy of which is attached and incorporated herein as tho set out in full.

21.   Mrs. Rafael is informed and believes and thereon alleges that even though Toribo through CRA Inc. set forth that the monthly income was from employment as a sales manager, One West Bank, FSB together with Westlend Financing neglected to perform their due diligence in confirming the borrower's ability to make the monthly payments over the lifetime of the loan. The loan was underwritten without due diligence by Westlend Financing. One West Bank together with Westlend Financing did not consider Mrs. Rafael's ability to repay the loan. The lack of documentation of income to support the stated income put Mrs. Rafael in harm's way as it would appear that the loan was granted based on the collateral value upon foreclosure instead of Mrs. Rafael's actual ability to make the payments.

22.   Mrs. Rafael is informed and believes and thereon alleges that Westlend Financial did not verify the existence and the amounts of the stated income since it was going to sell the loan through the securitization and MERS system.

23.   Mrs. Rafael is informed and believes and thereon alleges that, for this loan alone, they were charged by Rodgers through CRA Inc. the following: an origination fee of $10,710.00, a processing fee of $995.00, and an administration fee of $895.00 (**Exhibit F**) a true and correct copy of which is attached and incorporated herein as tho set out in full.

24.   Mrs. Rafael is informed and believes and thereon alleges that on or about November 27, 2007, the Deed of Trust securing the loan was recorded in the Official Records of the County Recorder, County of Los Angeles, as Instrument Number 072724790 (**Exhibit G**) a

FIRST VERIFIED COMPLAINT

1  true and correct copy of which is attached and incorporated herein as tho set out in full. That the

2  Deed of Trust was the security for repayment of the $306,000.00 loan. Said Deed of Trust is

3  hereinafter referred to as the "First".

4       25.    Mrs. Rafael is informed and believes and thereon alleges that MERS was set forth

5  in that First as "acting solely as a nominee for Westlend and their successors and assigns,"

6  while at the same time stating that "MERS is the beneficiary under this Security Instrument."

7       26.    Mrs. Rafael is informed and believes and thereon alleges that, without MERS

8  doubletalk regarding its status, Westlend would have actually conducted underwriting

9  concerning borrowers such as Mrs. Rafael because Westlend could not have easily sold the loan

10  through MERS. The existence and use of MERS enabled, encouraged, and furthered the

11  abandonment of underwriting standards to the detriment of Mrs. Rafael and provided the means

12  by which lenders such as Westlend and One West Bank FSB prospered by predatory lending.

13       27.    Mrs. Rafael is informed and believes and thereon alleges that this subterfuge by

14  MERS of calling itself the "beneficiary" was an attempt to illegally avoid the recording laws of

15  the State of California.

16       28.    Mrs. Rafael is informed and believes and thereon alleges that the website of

17  MERS is further evidence of its knowing participation in the predatory lending industry. In the

18  "TERMS AND CONDITIONS" therein, it is set forth: "The Member, at its own expense, shall

19  promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as

20  the mortgagee of record with respect to each mortgage loan that the Member registers on the

21  MERS system. MERS shall serve as mortgagee of record with respect to all such mortgage

22  loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners

23  thereof from time to time. MERS shall have no rights whatsoever to any payments made on

24  account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any

25  mortgaged properties securing such mortgage loans." (**Exhibit H**) a true and correct copy of

26  which is attached and incorporated herein as tho set out in full.

27       29.    Mrs. Rafael is informed and believes and thereon alleges that MERS could not

28  legally be the agent of any unknown "successor and assign" and that, therefore, it allowed itself

to be set forth as the beneficiary even though its own website makes clear that it was not the beneficiary. Mrs. Rafael is informed and believes and thereon alleges that, as neither agent of a successor and assign of Westlend Financing Inc. nor a true beneficiary, MERS willingly and knowingly participated in predatory lending by aiding lenders such as Westlend Financing Inc. in abandoning underwriting standards, placing taxpayers at financial risk through government bailouts.

30.     Mrs. Rafael is informed and believes and thereon alleges that Westlend Financing Inc, One West Bank, MERS, Rodgers, and Toribo conspired against Mrs. Rafael so that it would be easier to close the purchase and facilitate making huge profits in the secondary market in which subprime mortgages are/were bundled into securities and sold as investments, so that MERS could reap fees as Westlend's "nominee" for selling the loan on the secondary market, 24 C.F.R. §3500.21, and so that Rodgers and Toribo could reap their unconscionably high fees. This was done without regard to the fact that the defendants knew Mrs. Rafael was high risk, that she did not earn the alleged stated income as noted on the loan application.

31.     Mrs. Rafael is informed and believes and thereon alleges that Westlend Financing Inc, One West Bank, Rodgers, and Toribo systematically steered borrowers into inappropriate subprime loans with excessive charges and inadequately disclosed risks, including drastic and unexpected increases in required monthly payments, all of which has caused a flood of foreclosures and financial woes.

32.     Mrs. Rafael is informed and believes and thereon alleges that Westlend Financing Inc., directed and induced Rodgers and Toribo to direct purchasers such as Mrs. Rafael into subprime loans even if they were not qualified. Mrs. Rafael is informed and believes and thereon alleges that this is evidenced by the glaring lack of underwriting by Westlend and the amount paid outside escrow from Westlend to CRA Inc., Rogers and Toribo as set forth in paragraph 22 herein.

33.     Mrs. Rafael is informed and believes and thereon alleges that Westlend, Rodgers, and Toribo knew or should have known that Mrs. Rafael did not have income of $5,650.00 a month as set forth in the loan application prepared by Toribo for Westlend's scrutiny and

-8-

FIRST VERIFIED COMPLAINT

approval.

34.     Mrs. Rafael is informed and believes and thereon alleges that Westlend did not perform due diligence in qualifying Mrs. Rafael for the loan. Mrs. Rafael is informed and believes and thereon alleges that Westlend was reckless in funding the loans because Westlend intended to bundle/pool the loan with other loans it had funded and to then sell the stream of income from the pooled loans to investors either as mortgage pass-through or as collateralized mortgage obligations, and with the aid of the sham "beneficiary" MERS.

35.     Mrs. Rafael is informed and believes and thereon alleges that the loan was bundled and sold without actual, physical possession of the Fixed Rate Mortgage (FRM) being transferred and/or without being properly endorsed.

36.     Mrs. Rafael is informed and believes and thereon alleges that MERS purported to execute a Substitution of Trustee ("SOT") as to the First on or about May 12, 2010.  Mrs. Rafael is informed and believes and thereon alleges that the SOT was not notarized until 29 days later on June 10, 2010 and not recorded until August 19, 2010 as Instrument Number 10-1158973, In the Official Records of the County Recorder, County of Los Angeles. That SOT purported to substitute MTC Financial Inc. dba Trustee Corps as trustee under the First.

37.     Mrs. Rafael is informed and believes and thereon alleges that, in regard to the First, on or about September 30, 2010 MTC Financial Inc. through an agent, executed a Notice of Default and Election To Sell Under Deed of Trust ("NOD") (**Exhibit J**) a true and correct copy of which is attached and incorporated herein as tho set out in full, recorded May 17, 2010, as Instrument Number 20100667464, in the Official Records of the County Recorder, County of Los Angeles.

38.     Mrs. Rafael is informed and believes and thereon alleges that, in regard to the First, on or about August 19, 2010, MTC Financial Inc. recorded a Notice of Trustee's Sale (**Exhibit K**) a true and correct copy of which is attached and incorporated herein as tho set out in full, under the Deed of Trust ("NOS") as Instrument Number 20101158974, in the Official Records of the County Recorder, County of Los Angeles.

39.     Mrs. Rafael is informed and believes and thereon alleges that, on September 13,

-9-

2010, at 10:30am in front of the Pomona Superior Court, located at 350 West Mission Blvd, Pomona California 91766, MTC Financial Inc., dba Trustee Corps, trustee of Westland Financing Inc., sold the property located at 8957 Greenbush Avenue, Arleta, CA 91331, Legal Description:

> LOT 221, of Tract No. 17356, in the city of Los Angeles, County of Los Angeles, State of California, as per Map Recorded in Book 418, Pages 12 to 16 inclusive of Maps, in the Office of the County Recorder of said County

40.   Mrs. Rafael is informed and believes and thereon alleges that, on or about September 29, 2010 MTC Financial Inc. through an agent, executed a Trustee's Deed Upon Sale (TDUS) **(Exhibit L)** recorded on September 30, 2010, as Instrument Number 20101391682, in the Official Records of the County Recorder, County of Los Angeles.

41.   Mrs. Rafael is informed and believes and thereon alleges that, MERS was without requisite legal authority to have executed a SOT as it was not the true beneficiary under the First nor was it an agent of some unknown beneficiary.

42.   Mrs. Rafael is informed and believes and thereon alleges that, since MERS had no legal right to execute the SOT to MTC Financial Inc., MTC Financial was without any right to execute and record the NOD, NOS and TDUS.

43.   Mrs. Rafael is informed and believes and thereon alleges that, Westlend Financing is without the requisite legal authority to have executed and recorded the NOS and go forward with the trustee's sale as Westlend Financing has failed to file a declaration pursuant to California Civil Code §2923.5 that complies with California Code of Civil Procedure §2015.5.

## FIRST CAUSE OF ACTION

### (Violation of the Unruh Act, California Civil Code §51 et seq. Against Westlend, One West, MERS, Rodgers, Toribo and Does 1-10, inclusive)

44.   Mrs. Rafael realleges and incorporates herein by this reference Paragraphs 1 through 42, inclusive, as though fully set forth herein.

-10-

FIRST VERIFIED COMPLAINT

45.     As previously set forth, Mrs. Rafael is a Hispanic woman of Mexican national origin who at the time of the allegations herein and presently does not speak, write, or understand English. That being the case was particularly vulnerable when she was not provided with copies of the loan documents in Spanish. The vulnerability is evidenced by, among other things, the fact that Mrs. Rafael was charged high fees and costs in obtaining financing through Westlend regardless of the documented fact that her 2006 tax returns showed that Mrs. Rafael could not afford the payments.

46.     Mrs. Rafael is informed and believes and thereon alleges that Rodgers is a professional real estate broker which his business of brokering loans for consumers in the general public to lending institutions and was acting within the scope of that business with regard to the loan brokered through Westland for the purchase of refinancing.

47.     Mrs. Rafael is informed and believes and thereon alleges that Toribo was acting as the agent of Rodgers when he did the acts hereinabove alleged. As heretofore alleged in Paragraph 18, Mrs. Rafael is informed and believes and thereon and alleges that Toribo was the agent of Rodgers.

48.     Mrs. Rafael is informed and believes and thereon alleges that Westland is a professional loan lender which is in the business of providing funding to the general public for the purchase of real property and was acting within the scope of that business with regard to the refinancing of the home loan.

49.     Mrs. Rafael is informed and believes and thereon alleges that, in doing the wrongful acts complained of herein, Westlend, Rodgers, and Toribo discriminated against Mrs. Rafael on the basis of race and national origin in violation of California Civil Code §51.

50.     Mrs. Rafael is informed and believes and thereon alleges that, as a direct and proximate result of the conduct of Westland, Rodgers, and Toribo, Mrs. Rafael has suffered and will continue to suffer humiliation and mental anguish, including but not limited to the emotional distress caused by the potential eviction of herself, and two children, one of whom is permanently disabled and whom Mrs. Rafael extensively modified the home to make it handicapped accessible.

-11-

51.     Violations of the rights of Mrs. Rafael is guaranteed by California Civil Code § 51 entitle her to receive compensatory damages, attorney's fees, and injunctive relief as provided for in California Civil Code § 52.

52.     In doing the acts alleged in this Complaint, Westlend, Rodgers, and Toribo knew of should have known that their actions were likely to injure Mrs. Rafael. Mrs. Rafael is informed and believes and thereon alleges that said Defendants intended to cause injury to Mrs. Rafael and acted with a willful and conscious disregard of their rights as secured by California Civil Code § 51, thereby entitling Mrs. Rafael to recover treble damages or a minimum of $4,000.00 pursuant to California Civil Code §52(a).

## SECOND CAUSE OF ACTION

**(Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq. Against Defendants Westlend, One West, MERS, Rodgers, Toribo and Does 1-10, inclusive)**

53.     Mrs. Rafael re-alleges and incorporates herein by this reference Paragraphs 1-51, inclusive, as though fully set forth herein.

54.     Mrs. Rafael is informed and believes and thereon alleges that Westlend, Rodgers, and Toribo violated the Real Estate Settlement Procedures ACT ("RESPA")§ 2607 because Westlend paid (CRA Inc) Rodgers and Toribo, who accepted, hidden fees and kickbacks and that such business practice was a part of the purchase transaction of the subject property. Such practice consists, in part, of not providing a copy of disclosures in Spanish to borrowers of the Hispanic race and Mexican national origin.

55.     Mrs. Rafael is informed and believes and thereon alleges that, as heretofore set forth in Paragraph 22, the payment by Westlend outside of closing to (CRA Inc.)Rodgers and Toribo in the amount of $10,710.00 (more than 2% of the loan amount)(**Exhibit F**) was a violation of 12 U.S.C. § 2607 and Reg. X, 24 C.F.R. § 3500 et seq. Mrs. Rafael is informed and believes and thereon alleges that said fee was not for services actually performed and is not reasonable when total broker compensation is scrutinized.

56.     Mrs. Rafael is informed and believes and thereon alleges that the failure to

-12-

FIRST VERIFIED COMPLAINT

1  provide Spanish translation and thereby hide fees and kickbacks was not a bona fide error on the

2  part of defendants named in this cause of action. Further, Mrs. Rafael is informed and believes

3  and thereon alleges that the payment of a fee for services not actually performed and not

4  reasonably related to total broker compensation was not a bona fide error and is further evidence

5  of the predatory lending in which Westlend engaged.

6       57.    Mrs. Rafael is informed and believes and thereon alleges that Westland, MERS,

7  and MTC Financial intentionally did not notify Mrs. Rafael as to the intent to transfer the

8  servicing of the loan not the actual transfer of the loan within fifteen days before the effective

9  date of the transfer was a violation of 24 C.F.R. § 3500.21.

10       58.    Mrs. Rafael is informed and believes and thereon alleges that Westland violated

11  24 C.F.R. § 3500.15 for failing to disclose all affiliated business arrangements.

12       59.    Mrs. Rafael is informed and believes and thereon alleges that Westland, Rodgers

13  and Toribo violated 24 C.F.R. §3500.8(b) for failing to provide an accurate HUD-1 at closing.

14       60.    Mrs. Rafael has suffered damages by the acts of Toribo, Rodgers, and Westlend in

15  that her property funds were used to pay these undisclosed and illegal fees and/or kickbacks.

16  Therefore, Mrs. Rafael seeks and is entitled to treble damages, attorney's fees, and costs.

**THIRD CAUSE OF ACTION**

(Violation of California Civil Code § 2923.5 Against Westlend and Does 1-10
inclusive)

20

21       61.    Mrs. Rafael re-alleges and incorporates herein by this reference Paragraphs 1-59,

22  inclusive, as though fully set forth herein.

23       62.    California Civil Code § 2923.5 became operative September 6, 2008. As

24  heretofore set forth, the NOD in this case was recorded May 17, 2010. Subsection (b) of this

25  code section mandates that a NOD filed after September 6, 2008, "shall include a declaration

26  from the mortgagee, beneficiary, or authorized agent that it has contacted the borrower, tried

27  with due diligence to contact the borrower as required by this section, or the borrower has

28  surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent."

-13-

63.     As heretofore set forth, Mrs. Rafael is informed and believes and thereon alleges that there was no declaration as required by California Civil Code § 2923.5 recorded with the NOD. This information and belief is based upon the fact that the boilerplate wording does not qualify as a declaration as it does not comply with California Code of Civil Procedure § 2015.5.

64.     Mrs. Rafael is informed and believes and thereon alleges that without taking the steps mandated by California Civil Code § 2923.5 and thereafter filing a new NOD and NOS, Westlend had no legal right and/or standing to proceed with any trustee's sale.

65.     As heretofore alleged in Paragraphs 35-42, Mrs. Rafael is informed and believes and thereon alleges that Westlend had no right to proceed with the foreclosure sale as MERS was without the requisite legal authority to have executed the SOT which led to the NOD with the faulty "declaration".

66.     Mrs. Rafael is informed and believes and thereon alleges that, because Westlend proceeded with the trustee's sale in violation of California law, it shall be liable for not only actual damages, but also for punitive damages for maliciously and flagrantly proceeding in clear violation of the law governing foreclosures in the State of California.

67.     Mrs. Rafael is informed and believes that, since Westlend proceeded with the trustee's sale, the title obtained therefrom was void ab initio and that the purchaser will be incapable of duly perfecting title.

68.     Mrs. Rafael request an order declaring (1) that MERS had no legal authority to execute and record a SOT, (2) that the NOD was and is deficient, (3) that, therefore, Westlend had no legal right to proceed with recording a NOS, and that (4) the NOS is and was void ab initio.

## FOURTH CAUSE OF ACTION

### (Violation of California Business and Professions Code §17200 Against Westlend, MERS, Rodgers, Toribo, and Does 1-10, inclusive)

69.     Mrs. Rafael re-alleges and incorporates herein by this reference paragraphs 1-67, inclusive, as though fully set forth herein.

-14-

FIRST VERIFIED COMPLAINT

70.    Mrs. Rafael is informed and believes and thereon alleges that Rodgers does business as CRA Inc., a professional real estate brokerage, which is in the business of brokering loans for consumers in the general public to lending institutions and was acting within the scope of that business with regard to the FRM brokered to Westland for the refinancing.

71.    Mrs. Rafael is informed and believes and thereon alleges that Toribo was an agent of Rodgers and CRA Inc., and was acting within the scope of that agency in regard to the acts heretofore set forth.

72.    Mrs. Rafael is informed and believes and thereon alleges that Westland is a professional loan lender which is in the business of providing funding to the general public for the purchase of real property and was acting within the scope of that business with regard to the refinance of the FRM.

73.    Mrs. Rafael is informed and believes and thereon alleges, as they previously have in Paragraphs 15-16, that Rodgers and Toribo were agents of Westlend during the refinancing of her home.

74.    As heretofore set forth, Mrs. Rafael is informed and believes and thereon alleges that Westland, Rodgers, and Toribo violated the Unruh Act, California Civil Code § 51 et seq., by, among other things, having a practice and pattern of (a) persistently seeking out persons of foreign nationality, (b) targeting persons with limited or no English skills, and (c) pursuing persons with these characteristics regardless of their suitability for a financing product.

75.    As heretofore set forth, Mrs. Rafael is informed and believes and thereon alleges that these practices and patterns were the result of intentional discrimination as said defendants found it easier to push through and fund loans when the people to whom they were lending could not read, write, or understand the language in which they were "making required disclosures," only knew what said defendants wished them to know, and did not know what the defendants hid from them by not providing disclosures in Spanish, a common language in California.

76.    Mrs. Rafael is informed and believes and thereon alleges that such patterns and practices are unfair to competitors who use legitimate underwriting standards and provide

-15-

disclosures in a common language such as Spanish to non-English applicants.

77.   The second violation of the law by Rodgers, Toribo and Westlend upon which this claim is premised is violation of RESPA § 2607, as set out in Paragraphs 53 through 55, for the payment of a fee which was not actually earned and not reasonably related to the total broker compensation.

78.   Mrs. Rafael is informed and believes and thereon alleges that payment of such unearned and unreasonably related fees is unfair to competitors who follow the law as set out in RESPA.

79.   Mrs. Rafael is informed and believes and thereon alleges that Westlend further violated the law in regard to California Civil Code § 2923.5 as heretofore set forth in Paragraphs 61 through 63. Specifically, Mrs. Rafael is informed and believes and thereon alleges that the failure to file a "declaration" complying with California Code of Civil Procedure § 2015.5 is in fact no declaration. Therefore, Mrs. Rafael is informed and believes and thereon alleges that Westlend failed to comply with California Civil Code § 2923.5 the NOD and NOS are void and the trustee's sale is not warranted under California law.

80.   Mrs. Rafael is informed and believes and thereon alleges that the failure to file a declaration that meets the mandates of California law is unfair to competitors who do file a declaration under penalty of perjury in that those competitors have to keep exact records. Mrs. Rafael is further informed and believes that failure to abide by California Civil Code §2923.5 and California Code of Civil Procedure § 2015.5 circumvents the declared policy of the legislature as set forth in the Legislative findings and declarations in regard to Senate Bill 1137, which became California Civil Code § 2923.5. The importance of this legislative policy is evidenced by those findings which provide in pertinent part:

(d) *It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact*

-16-

1   *borrowers and explore options that could avoid foreclosures. These changes in*

2   *accessing the state's foreclosure process are essential to ensure that the process*

3   *does not exacerbate the current crisis by adding more foreclosures to the glut of*

4   *foreclosed properties already on the market when a foreclosure could have been*

5   *avoided. Those additional foreclosures will further destabilize the housing*

6   *market with significant, corresponding deleterious effects on the local and state*

7   *economy.*

8   Section 1(d) of Stats. 2008, c. 69 (S.B. 1137). [Emphasis added]

9   80.   Mrs. Rafael is informed and believes and thereon alleges that MERS violated

10   the provisions of California Civil Code 2924 when it executed and recorded the SOT because

11   MERS, as heretofore alleged in Paragraphs 24 through 28, was never a mortgagee or true

12   beneficiary and could not be and was not an agent for a principal which is and was unknown.

13   81.   Mrs. Rafael is informed and believes and thereon alleges that MERS' lack of

14   status to proceed under California Civil Code § 2924 makes the NOD and NOS void, and any

15   trustee's sale illegal and unwarranted under California law.

16   82.   Mrs. Rafael is informed and believes and thereon alleges that, as a proximate

17   and foreseeable result of the unlawful conduct of Westland, Rodgers, Toribo and MERS, their

18   business acts and/or practices have caused injury to Mrs. Rafael and her family.

19   83.   Mrs. Rafael is informed and believes and thereon alleges that the illegal acts of

20   the defendants named in this cause of action as described above are a serious and continuing

21   threat to Mrs. Rafael because these illegal acts have allowed Westlend to, among other acts file

22   a deficient NOD, making the NOS and the trustee's sale of Mrs. Rafael's home illegal.

23   84.   Mrs. Rafael is informed and believes and thereon alleges that, if Westlend is

24   allowed to rely on its own illegal acts, the illegal acts of its agents Rodgers and Toribo, and the

25   illegal acts of MERS, all of which are set forth in this claim, Mrs. Rafael and her children will

26   be forced out of the home. Such eviction will cause Mrs. Rafael to suffer further immediate

27   and irreparable injury, loss and damage.

28   85.   Mrs. Rafael is further informed and believes and thereon alleges that, in the

-17-

1  absence of a temporary restraining order and preliminary and permanent injunction as prayed

2  for below, Westlend will continue to wrongfully evict Mrs. Rafael and her family. Mrs. Rafael

3  is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings,

4  profits, compensation, and benefits which have been obtained by Westlend, MERS, Rodgers,

5  and Toribo as a result of such business acts and/or practices, as well as attorney's fees, and

6  costs.

### FIFTH CAUSE OF ACTION

Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

(Against Defendants One West Bank, Westlend, Mers, TRICOR, and MTC Financial)

10  86.  Mrs. Rafael re-alleges and incorporates by reference all preceding paragraphs

11  as though fully set forth herein.

12  87.  Every contract imposes upon each party a duty of good faith and fair

13  dealing in its performance and its enforcement.  This implied covenant of good faith and fair

14  dealing requires that no party will do anything that will have the effect of impairing, destroying,

15  or injuring the rights of the other party to receive the benefits of their agreement.  The covenant

16  implies that in all contracts each party will do all things reasonably contemplated by the terms of

17  the contract to accomplish its purpose.  This covenant protects the benefits of the contract that

18  the parties reasonably contemplated when they entered into the agreement.

19  88.  The terms of the Loan imposed upon Defendants, **One West Bank, Westlend,**

20  **Mers, TRICOR, and MTC Financial** a duty of good faith and fair dealing in this matter.

21  89.  Defendants, **One West Bank, Westlend, Mers, TRICOR, and MTC Financial**

22  enjoyed substantial discretionary power affecting the rights of Mrs. Rafael during the events

23  alleged in this Complaint. Defendants were required to exercise such power in good faith.

24  90.  Defendants, **One West Bank, Westlend, Mers, TRICOR, and MTC Financial**

25

26

27  –18–

28

willfully breached their implied covenant of good faith and fair dealing with Mrs. Rafael when Defendants:

I.    Willfully withheld numerous disclosures;

II.    Willfully withheld notices in regard to excessive fees and finance charges including Yield Spread Premiums, Underwriting standards, Good Faith Estimates, Disclosures of additional income due to interest rate increases, and failure to disclose when negative credit scores were disseminated;

III.    Willfully placed Mrs. Rafael in a loan that she did not qualify for, could not afford, and subjected her to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

91.    As a result of Defendants' breach of this covenant, Mrs. Rafael has suffered injury and has caused Mrs. Rafael the threat of loss of his home.  Mrs. Rafael has incurred and continues to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

92.    Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Mrs. Rafael to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

## SIXTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

**(Against Defendants, One West Bank, Westlend, Mers, TRICOR, and MTC Financial)**

93.    Mrs. Rafael  re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

94.    Defendants, **One West Bank, Westlend, Mers, TRICOR, and MTC Financial**

-19-

FIRST VERIFIED COMPLAINT

owed a fiduciary duty to Mrs. Rafael and breached that duty by failing to advise or notify Mrs. Rafael when Defendants knew or should have known that Mrs. Rafael will or have a likelihood of defaulting on the loans, Defendants have a fiduciary duty to the borrower to not place them in those loans (in harm's way).

Regarding these loans, it was in the best interest of the Defendants, **One West Bank, Westland, Mers, TRICOR, and MTC Financial** to promote the particular program for which they approved Mrs. Rafael. It led to a maximization of profits for the Defendants, with no concern for the borrower. A 30-year fixed would have netted less return for the lender, though better for the borrower.

95. Defendants failed to provide material disclosures regarding the loan and its interest rate to Mrs. Rafael while in their capacity, despite the fact that Mrs. Rafael repeatedly requested these material disclosures both verbally and in writing.

96. Defendants, **One West Bank, Westland, Mers, TRICOR, and MTC Financial** failed to fully comply with TILA regulations and laws designated to protect Mrs. Rafael. The failure to do so placed Mrs. Rafael in a serious disadvantage and loss of her home. Such actions are violations of a fiduciary responsibility owed to Mrs. Rafael by Defendants.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment Against Westland, Mers, Rodgers, Toribo, and Does 1-10)

97.     Mrs. Rafael re-alleges and incorporates herein by this reference Paragraphs 1-85, inclusive, as though fully set forth herein.

98.     Mrs. Rafael in informed and believes and thereon alleges that the scheme to feed off Hispanic persons of Mexican national origin, to steer prime loan candidates into

FIRST VERIFIED COMPLAINT

1  marketable subprime loans, along with the other acts complained of hereinabove, unjustly

2  enriched Westland, MERS, Rodgers, and Toribo to the detriment of Mrs. Rafael, specifically

3  the payment of costs and fees associated with the refinancing of her home which led to

4  unreasonably high payments well above her means that ultimately cost Mrs. Rafael and her

5  family their home.

6      99.   The retention of funds paid by Mrs. Rafael violates the fundamental principles

7  of justice, equity, and good conscience.

8      100.  Accordingly, the named defendants in this cause of action should be ordered to

9  return any funds obtained as a result of their deceptive scheme and the trustee sale set aside,

10  home returned to Mrs. Rafael and eviction expunged from her record..

11                      **EIGTH CAUSE OF ACTION**

12              **NEGLIGENCE PER SE (VIOLATION OF CAL. CIV.**

13                  **CODE §§ 2924, 2934a(c) and 2934a(d)**

14          **(Against Westlend, Mers, Rodgers, Toribo, and Does 1-10, Inclusive)**

15

16

17      101 Mrs. Rafael re-alleges and incorporates by reference the allegations contained in the

18  paragraphs 1 through 89 above as though fully set forth herein.

19      102   Mrs. Rafael alleges that at all times mentioned herein the Subject Property was

20  the owner occupied residence and that Mrs. Rafael was protected under California Civil Code §

21  2924 and 2934.

22      103   Mrs. Rafael further alleges based upon information and belief that the Substitution

23  of Trustee (SOT) (see **Exhibit I**) is statutorily defective in that it fails to comply with Section

24  2934a(d) by allowing an unauthorized party to issue an Notice of Default (see **Exhibit J**).

25  Further, a copy of the Substitution of Trustee was not mailed prior to/or concurrently with the

26  NOD and no affidavit were attached to the Substitution indicating that notice had been given to

27  Mrs. Rafael in a manner required by Section 2924b as required by Section 2934a(c).

28

-21-

104.   Defendants **Westlend through its agent MERS** was not authorized to issue the NOD on May 17, 2010 when it was recorded. Consequently, the entire foreclosure process was and remains invalid as defendants **Westlend and MERS** lack legal authority to foreclose on the Subject Property. *(Miller v. Cote* (1982) 127 Cal.App.3d 888, 894; *Sweatt v. Foreclosure Co.* (1985) 166 Cal.App.3d 273,278; *Wanger v EMC Mortgage Corporation* (2002) 103 Cal.App.4th 1125.) A foreclosure process predicated on a statutorily defective NOD is invalid as a matter of law. (See *Miller v. Cote, supra,* at 894 (a premature NOD is fatally defective).

105.   At all times mentioned herein, defendant **MERS** was acting as an agent for defendant **Westlend.**

106.   As a direct and proximate result of the wrongful foreclosure described herein, Mrs. Rafael has suffered damage to her consumer credit history and home mortgage creditworthiness with resulting financial loss, and have suffered additional damages according to proof.

### NINTH CAUSE OF ACTION

### Unconscionability – UCC-2-3202

### (Against Defendants One West Bank, Westlend, Mers, TRICOR, and MTC Financial)

107.   Mrs. Rafael re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

108.   If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

FIRST VERIFIED COMPLAINT

109.   When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

110.   Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants, **One West Bank, Westlend, Mers, TRICOR, and MTC Financial** were required to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Mrs. Rafael the court may find that the loan agreement is unconscionable and of no force or effect.

<div align="center">

**TENTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(AGAINST ALL OF THE DEFENDANTS)**

</div>

111.   Mrs. Rafael re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112.   Defendants each of them acted intentionally in taking advantage of Mrs. Rafael, defrauding her into entering into a mortgage loan and Deed of Trust knowing that she could not afford the payments in a long period of time and subjecting her to inevitable foreclosure.

113.   Defendants' unfair, unlawful and fraudulent conduct was extreme and outrageous and done with malice and reckless disregard of the likelihood of causing Mrs. Rafael and her family emotional distress.

114.   As a proximate result of the aforementioned outrageous acts, Mrs. Rafael has suffered, and continues to suffer, extreme and severe emotional distress.

<div align="center">

**ELEVENTH CAUSE OF ACTION**

**Fraud - California Civil Code §1572**

**(Against Westlend, Mers, Rodgers, Toribo, and Does 1-10, Inclusive)**

</div>

<div align="center">

-23-

</div>

115.    Mrs. Rafael re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116.    Defendants, **One West Bank, Westlend, Mers, MTC Financial, Rodgers and Toribo,** intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Mrs. Rafael and inducing her to part with her personal and real property by using a stated income loan.

117.    The credit application and or available W-2's provided Mrs. Rafael was enough, in addition to the application itself for Defendants to know what type of loan should be offered, and what Mrs. Rafael could not afford.  Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud. U.S. v. Robinson, 4th Circuit, 2004.

118.    Defendants, **One West Bank, Westlend, Mers, MTC Financial, Rodgers and Toribo** engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which injustice ought to be made known.

119.    This loan was fraudulent because: a) it was not clear that borrower will be in negative-amortization from the beginning; b) the teaser rate of 6.5% is illusory and never really in effect; c) the payment schedule on the TILDs does not identify the kind of payment, i.e., negative-amortization that borrowers are getting; and d) underwriting a borrower based on a negative-amortization payment is "knowingly" selling a mortgage loan that will fail. e) The plaintiffs' income is incorrect and overstated on the loan application.

120.    Mrs. Rafael justifiably relied on Defendants' deception, which was the actual and proximate cause of Mrs. Rafael's damages.

121.    Mrs. Rafael had been on time with her payments. Mrs. Rafael disputed the allegation by Defendants **One West Bank, Westlend, Mers, ,** that she was in default. Mrs. Rafael based on information and believes and alleges that the defendants, **One West Bank, Westlend, Mers,** had no authorization to foreclose on the subject property nor that the Note was

-24-

1   endorsed or transferred to the defendants.  The property's Note had been securitized. The Notice

2   of Default was maliciously recorded in the County Records. The material omissions and

3   misrepresentations of Defendants, constitutes fraud, misrepresentation, and misconduct by

4   Defendants.

5        122.    Mrs. Rafael is entitled to exemplary and punitive damages for Defendants'

6   fraudulent conduct in the sum to be determined at trial.  Further, fraudulent concealment voids

7   the contract.

8                        **TWELFTH CAUSE OF ACTION**

9                          **WRONGFUL FORECLOSURE**

10      **(Against Defendants One West Bank, Westland, Mers, MTC Financial and Does 1-**

11                             **10, Inclusive)**

12

13       123.    Mrs. Rafael based on information and belief alleges that none of the Defendants

14   **One West Bank, Westlend, Mers, MTC Financial, Rodgers and Toribo and Does 1-10**

15   **Inclusive,** or their authorized agents has a legal interest with regard to the Promissory Note, and

16   therefore none of them could lawfully foreclose upon Plaintiffs' property. Defendants Lack

17   Standing due to the fact that The Note has been securitized and because there is no instrument to

18   prove otherwise; that none of the defendants own the Note and the same has not been endorsed

19   to any of them nor had been authorized to enforce it.

20       a.      Mrs. Rafael believes that their loan was "securitized" with the Note being

21   assigned to an SPV.  The SVP issued "Certificates" to the ultimate investors in the loan.  The

22   SPV and/or Certificate Holders are the only party with judicial standing and the only party that

23   may properly seek to enforce the Note.  When loans are securitized and assigned to an SPV, loan

24   modifications are governed by Pooling and Servicing Agreements ("PSA").  According to theses

25   PSAs, Defendants have no authority to modify the loan from the SPV and/or Certificate Holders,

26   and in many cases the agent or trustee of the SPV cannot modify the loan without the consent of

27   the Certificate Holders.  The SPV and Certificate Holders are, therefore, necessary parties.

28   However, all information regarding Plaintiffs' loan, its assignment to an SPV, and the terms of

                                    -25-

1    the PSA governing that loan are in the exclusive and tightly guarded hands of Defendants.

2    RESPA does not allow concealment of this information.

3         b.    The final stage of a foreclosure proceeding is a sale of the property through a

4    Public auction, at which, the current beneficial owner of the right to foreclose is the only lawful

5    party who can provide instructions to the trustee on the amount of money to accept at the sale or

6    to "credit bid" up to the amount owed on the loan.  None of the Defendants, **One West Bank,**

7    **Westlend, Mers, MTC Financial** and/or any of their authorized agents, who have played a part

8    in the non-judicial foreclosure proceedings, is entitled to receive payment from the loan

9    proceeds, or the Subject Residence.  The assertions made in the foreclosure proceedings that the

10   beneficiary named on the trust deed is entitled to foreclose, and the notices of default and trustee

11   sale based on amounts not properly owing, are act of fraud or deceit within the meaning of Cal.

12   Civ. Code §2924(h).  As such, and in compliance with the heightened pleading standards for

13   fraud cases, Plaintiffs seek access to this information and time to assess it via her request for

14   preliminary injunction.

15        c.    Mrs. Rafael based on information and belief alleges that neither MERS nor any of

16   the defendants name herein and or servicer has a beneficial interest in the Note.  The actual

17   owner of the note has not executed the Assignment to the new party. An assignment of a

18   mortgage in the absences of the assignment and physical delivery of the note will result in a

19   nullity.

20        d.    Therefore plaintiffs hereby allege that neither Westlend, nor MERS, nor any of

21   the defendants named herein has legal standing to foreclose. There is no substitution of Trustee

22   recorded in the County Records as required by law supporting the allegations by Westlend and

23   defendant MERS that they have been authorized or assigned or endorsed to foreclose on the

24   Note.

25        e.    Upon information and belief, the mortgage note has been paid in whole or in part

26   by one or more undisclosed third party(ies) who, prior to or contemporaneously with the closing

27   on the "loan", paid the originating lender in exchange for certain unrecorded rights to the

28   revenues arising out of the loan documents.

f.       Upon information and belief and in connection with the matters at hand, **One West Bank, Westlend, Mers, MTC Financial** and any of the foreclosing party has no financial interest in the note or mortgages herein mentioned in this complaint.

g.       Mrs. Rafael upon information and belief allege that the original note was destroyed or was transferred to a Structured Investment Vehicle which may be located offshore, which also has no interest in the note or mortgage or revenue thereunder.

h.       Mrs. Rafael upon information and belief allege that the revenue stream deriving from the note and mortgage was eviscerated upon one or more assignments of the note and mortgage to third parties and parsing of obligations as part of the securitization process, some of whom were joined as co-obligors and co-obliges in connection with the closing.

i.       To the extent that Mrs. Rafael had been paid on the underlying obligation or has no legal interest therein or in the note or mortgage, or does not have lawful possession of the note or mortgage, **Mrs. Rafael's allegations of possession and capacity to institute foreclosure constitute fraud.**

### DECLARATORY RELIEF

**(Against Defendants One West Bank, Westlend, Mers, MTC Financial and Does 1 through 10 inclusive)**

j.       Mrs. Rafael re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

k.       An actual controversy has arisen and now exists between Mrs. Rafael and Defendants regarding their respective rights and duties, in that Mrs. Rafael contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, the California Civil Code, California Business and Professions Code, UDAP, TILA and RESPA.  Thus the purported power of sale by Defendants no longer applies.  Mrs. Rafael further contends that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper

delivery procedures under RESPA. Mrs. Rafael further contends that the Defendants perpetrated a fraudulent loan transaction.

l.      Mrs. Rafael requests that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Mrs. Rafael to be at an equitable disadvantage to Defendants. Mrs. Rafael further requests that title to the Subject Property remain in Mrs. Rafael's' name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation.

m.     Mrs. Rafael respectfully requests that this Court set aside the Unlawful Detainer filed in the Chatsworth Superior Court located at 9425 Penfield Ave, Chatsworth, CA 91311 on October 29, 2010, Case Number 10H03020 pending the outcome of this case.

n.      As a result of the Defendants' actions, Mrs. Rafael has suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property. Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs will ask for the following for each Cause of Action sustained:

1. For Compensatory Damages in an amount to be determined by proof at trial.
2. For Special Damages in an amount to be determined by proof at trial.
3. For General Damages in an amount to be determined by proof at trial.
4. For Treble Damages in an amount to be determined by proof at trial.
5. For Punitive Damages as against the individual Defendants.
6. For Attorney's Fees and Costs of this action.
7. For Declaratory Relief, including a declaration that Plaintiff is the prevailing party.

-28-

8.  For an Injunction, enjoining any eviction proceeding on the Subject Property.

9.  For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

10. For a judgment rescinding the foreclosure and returning the subject property to Mrs. Rafael.

11. For any prejudgment or other interest according to law.

12. Any other and further relief that the Court considers just and proper.

December 6, 2010

S.C. HARRIS

ATTORNEY FOR PLAINTIFF

-29-

## VERIFICATION OF DEFENDANT

I, Maria Antonia Rafael, declare that I am the defendant in the above-entitled action; that I have
read the foregoing Verified First Complaint and know its contents; and I declare that the matters
stated in the foregoing document are true of my own knowledge, except as to the matters which
are stated on my information or belief, and as to those matters I believe them to be true.

Executed on November 2, 2010, at Santa Clarita, California.

I declare under penalty of perjury under the laws of the state of California that the foregoing is
true and correct.

_____
Print Name

*Maria Antonia Rafael.*
Signature

# EXHIBIT "A"

 81▮-▮3-8315   p.1

Dec 11 07 12:26p   Carl Rodgers & Associate 

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification, but his or not liabilities must be considered because the spouse or other person has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or not liabilities must be considered because the spouse or other person resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower *Maria Antonia Rafael*    Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | |

| Amount $ 308,000 | Interest Rate 6.375 % | No. of Months 360/380 | Amortization Type: ☑ Fixed Rate  ☐ Other (explain): ☐ GPM  ☐ ARM (type): |
|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & ZIP)   County: Los Angeles
8957 Greenbush ave, Arleta (area) Los Angeles, CA 91331

No. of Units 1
Year Built

Legal Description of Subject Property (attach description if necessary)

Property will be: ☑ Primary Residence ☐ Secondary Residence ☐ Investment

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Complete this line if construction or construction-permanent loan. | | |
|---|---|---|---|---|
| | ☑ Refinance  ☐ Construction-Permanent | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |

Complete this line if construction or construction-permanent loan.
Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $

Complete this line if this is a refinance loan.
| Year Acquired 1990 | Original Cost $ 204,000 | Amount Existing Liens $ 218,155 | Purpose of Refinance Cash-Out/Other | Describe Improvements ☐ made ☐ to be made  Cost: $ |
|---|---|---|---|---|

Title will be held in what Name(s)
Maria Antonia Rafael

Manner in which Title will be held
A married women as her sole and separ

Estate will be held in:
☑ Fee Simple
☐ Leasehold (show expiration date)

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | | | | | Co-Borrower | | | |
|---|---|---|---|---|---|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | | | | | Co-Borrower's Name (include Jr. or Sr. if applicable) | | | | |
| Maria Antonia Rafael | | | | | | | | | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) 07/26/1961 | Yrs. School 12 | | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|---|

| ☑ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. 2    ages 29,11 | | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no.    ages |
|---|---|---|---|---|

Present Address (street, city, state, ZIP)  ☑ Own ☐ Rent  17  No. Yrs.
8957 Greenbush ave
Arleta (area) Los Angeles, CA 91331

Present Address (street, city, state, ZIP)  ☐ Own ☐ Rent  No. Yrs.

Mailing Address, if different from Present Address

Mailing Address, if different from Present Address

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent  No. Yrs. |
|---|---|

| Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent  No. Yrs. |
|---|---|

Borrower  *MAR*
Co-Borrower

Freddie Mac Form 65   07/05

Fannie Mae Form 1003   07/05
CALYX Form Loanapp1.frm 09/05

Page 1 of 5

## IV. EMPLOYMENT INFORMATION

| Borrower | | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer ☐ Self Employed | Yrs. on this job 3 yr(s) | Name & Address of Employer ☐ Self Employed | Yrs. on this job | |
| Casa Nueva Insurance Services 8323 Reseda Blvd Ste 200A Northridge, CA 91324 | Yrs. employed in this line of work/profession 7 | | Yrs. employed in this line of work/profession | |
| Position/Title/Type of Business Sales Manager. | Business Phone (incl. area code) 818-772-6445 | Position/Title/Type of Business | Business Phone (incl. area code) | |

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,650.00 | $ | $ 5,650.00 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 1,188.00 | $ 1,909.04 |
| Bonuses | | | | Other Financing (P&I) | | 89.25 |
| Commissions | | | | Hazard Insurance | 59.50 | 230.05 |
| Dividends/Interest | | | | Real Estate Taxes | 230.00 | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 5,650.00 | $ | $ 5,650.00 | Total | $ 1,477.55 | $ 2,228.34 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

*Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| Describe Other Income | B/C | | Monthly Amount |
|---|---|---|---|
| | | | $ |

MAR

Freddie Mac Form 65   07/05

Borrower
Co-Borrower

Page 2 of 6

Fannie Mae Form 1003   07/05
CALYX Form Loanapp2.frm 09/05

# EXHIBIT "B"



# S.C. HARRIS LAW

## Fax Cover Sheet

**DATE:** November 12, 2010

**TO:** Casa Nueva Financial Services
**Attn:** Jorge Martinez

**PHONE:** (818)772-5445

**FAX:** (818)772-5366

No. 5473    P.

**FROM:** Lisandra Diaz

**PHONE:** 800-719-1114

**FAX:** 661-719-1114

**Email:**

**RE:** Employment Status

**NUMBER OF PAGES INCLUDING COVER SHEET:** 1

**MESSAGE:**
We are attempting to verify past or current employment for Maria Antonia Rafael.
Please state or attach information regarding previous or current employment with Casa Nueva
Financial Services from the years 2005 to the present.

Your prompt attention to this matter is requested.

Thank you.

Lisandra Diaz

S.C Harris Law

**26376 Ruether Avenue Santa Clarita CA  91350**
**Tel: 800-719-1114   Fax: 661-251-1111**
**www.scharris.com**



# MEMO

**To:** S.C. Harris Law

**FROM:** Jorge Martinez

**DATE:** 11/01/2010

**RE:** Maria Antonia Rafael

**This person has never worked for Casa Nueva Insurance Services.If you have any other questions please contact us at (818) 772-6445.**

Thank you,

Jorge Martinez

Annette Gabryelski

# EXHIBIT "C"

TAXPAYERS' COPY

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** **2006** (99) IRS Use Only—Do not write or staple in this space.

OMB No. 1545-0074

For the year Jan. 1–Dec. 31, 2006, or other tax year beginning, ending

**Label**

(See instructions on page 15.) Use the IRS label. Otherwise, please print or type.

| | | |
|---|---|---|
| Your first name | M I | Last name | Suffix |
| HERLINDO | M | RAFAEL | |
| If a joint return, spouse's first name | M I | Last name | Suffix |
| MARIA | A | RAFAEL | |

Your social security number

Spouse's social security number

▲ You must enter your SSN(s) above. ▲

Home address (number and street). If you have a P.O. box, see page 16.
8957 GREENBUSH AVE    Apt. no

City, town or post office, state, and ZIP code. If you have a foreign address, see page 16.
ARLETA    CA    91331

Checking a box below will not change your tax or refund.

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund (see page 16)  [X] You  [X] Spouse

**Filing Status**

1  ☐ Single
2  [X] Married filing jointly (even if only one had income)
3  ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4  ☐ Head of household (with qualifying person). (See page 17.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5  ☐ Qualifying widow(er) with dependent child (see page 17)

Check only one box.

**Exemptions**

8a  [X] Yourself. If someone can claim you as a dependent, do not check box 6a
b   [X] Spouse

| | Boxes checked on 6a and 6b | 2 |
|---|---|---|

c  Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✔ if qualifying child for child tax credit (see page 19) |
|---|---|---|---|
| ADONIS    RAFAEL | | Son | [X] |

| | No. of children on 6c who: |
|---|---|
| ● lived with you | 1 |
| ● did not live with you due to divorce or separation (see page 20) | 0 |
| Dependents on 6c not entered above | 0 |

If more than four dependents, see page 19.

Add numbers on lines above ▶  3

d  Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see page 23.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

7   Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . **7** | 10,927
8a  Taxable interest. Attach Schedule B if required . . . . . . . **8a** | 67
b   Tax-exempt interest. Do not include on line 8a | **8b** |
9a  Ordinary dividends. Attach Schedule B if required . . . . . . **9a** |
b   Qualified dividends (see page 23) | **9b** |
10  Taxable refunds, credits, or offsets of state and local income taxes (see page 24) | **10** |
11  Alimony received . . . . . . . . . . . . . . . . . . . . . **11** |
12  Business income or (loss). Attach Schedule C or C-EZ . . . . **12** | 8,382
13  Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ **13** |
14  Other gains or (losses). Attach Form 4797 . . . . . . . . . **14** |
15a IRA distributions | **15a** | b Taxable amount (see page 25) **15b** |
16a Pensions and annuities | **16a** | b Taxable amount (see page 26) **16b** |
17  Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | **17** |
18  Farm income or (loss). Attach Schedule F . . . . . . . . . **18** |
19  Unemployment compensation . . . . . . . . . . . . . . **19** |
20a Social security benefits | **20a** | b Taxable amount (see page 27) **20b** |
21  Other income. List type and amount (see page 29) | **21** |
22  Add the amounts in the far right column for lines 7 through 21. This is your total income ▶ **22** | 19,376

**Adjusted Gross Income**

23  Archer MSA deduction. Attach Form 8853 . . . . . . . **23** |
24  Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ . **24** |
25  Health savings account deduction. Attach Form 8889 . . . **25** |
26  Moving expenses. Attach Form 3903 . . . . . . . . . **26** |
27  One-half of self-employment tax. Attach Schedule SE . . . **27** | 592
28  Self-employed SEP, SIMPLE, and qualified plans . . . . . **28** |
29  Self-employed health insurance deduction (see page 29) . . **29** |
30  Penalty on early withdrawal of savings . . . . . . . . . **30** |
31a Alimony paid  b Recipient's SSN ▶ | **31a** |
32  IRA deduction (see page 33) . . . . . . . . . . . . . **32** |
33  Student loan interest deduction (see page 33) . . . . . . **33** |
34  Jury duty pay you gave to your employer . . . . . . . . **34** |
35  Domestic production activities deduction. Attach Form 8903 . **35** |
36  Add lines 23 through 31a and 32 through 35 . . . . . . . . . . . . . **36** | 592
37  Subtract line 36 from line 22. This is your adjusted gross income ▶ **37** | 18,784

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 80.

Form **1040** (2006)

# EXHIBIT "D"

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|
| | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| a. Purchase price | $ | a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Alterations, improvements, repairs | | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Land (if acquired separately) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | 218,155.00 | | | | | |
| e. Estimated prepaid items | | d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| f. Estimated closing costs | 5,000.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| h. Discount (if Borrower will pay) | | | | | | |
| i. Total costs (add items a through h) | 223,155.00 | | | | | |
| j. Subordinate financing | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| k. Borrower's closing costs paid by Seller | | | | | | |
| l. Other Credits (explain) | | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| | | h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| | | i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| | | j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 306,000.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | 306,000.00 | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -82,845.00 | (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

### IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X Maria Antonia Rafael | 11/30/07 | X | |

### X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | | CO-BORROWER ☐ I do not wish to furnish this information | |
|---|---|---|---|
| Ethnicity: ☑ Hispanic or Latino ☐ Not Hispanic or Latino | | Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino | |
| Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☑ White | | Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | |
| Sex: ☑ Female ☐ Male | | Sex: ☐ Female ☐ Male | |

| To be Completed by Interviewer This application was taken by: ☑ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Interviewer's Name (print or type) Fernando Toribo | Name and Address of Interviewer's Employer CRA |
|---|---|---|
| | Interviewer's Signature [signature] Date 11/30/07 | 14411 Hamlin Street Ste N Van Nuys, CA 91401 (P) 818-785-5511 (F) 805-426-8977 |
| | Interviewer's Phone Number (incl. area code) 818-381-3403 | |

EXHIBIT "E"

# GOOD FAITH ESTIMATE

| | |
|---|---|
| Applicants: | Maria Antonia Rafael |
| Property Addr: | 8957 Greenbush ave, Arleta (area) Los Angeles, CA 91331 |
| Prepared By: | CRA  Ph. 818-785-5511 |
| | 14411 Hamlin Street Ste N, Van Nuys, CA 91401 |

| | |
|---|---|
| Application No: | Rafael Maria |
| Date Prepared: | 10/30/2007 |
| Loan Program: | 30yr Fix |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates—actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $   306,000   Interest Rate:   6.375 %   Term:   360 / 360 mths

| | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | | | | |
| 801 | Loan Origination Fee       1.500% | | 4,590.00 | | | | |
| 802 | Loan Discount | | | | | | |
| 803 | Appraisal Fee | | 350.00 | | | | |
| 804 | Credit Report | | 18.00 | | | | |
| 805 | Lender's Inspection Fee | | | | | | |
| 808 | Mortgage Broker Fee | | | | | | |
| 809 | Tax Related Service Fee | | 75.00 | | | | |
| 810 | Processing Fee | | 995.00 | | | | |
| 811 | Underwriting Fee | | 450.00 | | | | |
| 812 | Wire Transfer Fee | | 25.00 | | | | |
| | Flood Cert | | 18.00 | | | | |

| | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1100 | TITLE CHARGES: | | | | | |
| 1101 | Closing or Escrow Fee: | 785.00 | | | | |
| 1105 | Document Preparation Fee | 200.00 | | | | |
| 1106 | Notary Fees | 100.00 | | | | |
| 1107 | Attorney Fees | | | | | |
| 1108 | Title Insurance | 850.00 | | | | |

| | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | | | | |
| 1201 | Recording Fees: | 25.00 | | | | |
| 1202 | City/County Tax/Stamps: | | | | | |
| 1203 | State Tax/Stamps: | | | | | |

| | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | | | | |
| 1302 | Pest Inspection | | | | | |

| | | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| | Estimated Closing Costs | | | 8,481.00 | | | | |
| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | | | | | |
| 901 | Interest for    15    days @ $    54.1875   per day | | 812.81 | | | | | |
| 902 | Mortgage Insurance Premium | | | | | | | |
| 903 | Hazard Insurance Premium | | | | | | | |
| 904 | | | | | | | | |
| 905 | VA Funding Fee | | | | | | | |

| | | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 1000 | RESERVES DEPOSITED WITH LENDER: | | | | | | | |
| 1001 | Hazard Insurance Premiums | 2 months @ $ | 89.25 | per month | 178.50 | | | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | | per month | | | | |
| 1003 | School Tax | months @ $ | | per month | | | | |
| 1004 | Taxes and Assessment Reserves | 6 months @ $ | 230.05 | per month | 1,380.30 | | | |
| 1005 | Flood Insurance Reserves | months @ $ | | per month | | | | |
| | | months @ $ | | per month | | | | |
| | | months @ $ | | per month | | | | |

| | |
|---|---|
| Estimated Prepaid Items/Reserves | 2,371.61 |
| TOTAL ESTIMATED SETTLEMENT CHARGES | 10,852.61 |

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | |
|---|---|---|
| Purchase Price/Payoff (+) | 216,185.00 | New First Mortgage(-) |
| Loan Amount (-) | 306,000.00 | Sub Financing(-) |
| Est. Closing Costs (+) | 8,481.00 | New 2nd Mtg Closing Costs(+) |
| Est. Prepaid Items/Reserves (+) | 2,371.61 | |
| Amount Paid by Seller (-) | | |

| TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|
| Principal & Interest | 1,909.04 |
| Other Financing (P & I) | |
| Hazard Insurance | 89.25 |
| Real Estate Taxes | 230.05 |
| Mortgage Insurance | |
| Homeowner Assn. Dues | |
| Other | |

| | | | |
|---|---|---|---|
| Total Est. Funds to you | 75,852.39 | Total Monthly Payment | 2,228.34 |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.   The undersigned acknowledges receipt of the booklet "Settlement Costs" and if applicable the Consumer Handbook on ARM Mortgages.

_Maria Antonia Rafael_  10/30/07

Applicant  Maria Antonia Rafael          Date                Applicant                                        Date

# EXHIBIT "F"

Lender: WESTLEND FINANCING, INC., DBA AMERICAN CAPITAL FUNDING
15400 SHERMAN WAY, #292
VAN NUYS, CALIFORNIA 91406

To: MARIA ANTONIA RAFAEL
8957 GREENBUSH AVENUE
(ARLETA AREA) LOS ANGELES, CALIFORNIA 91331

Date: NOVEMBER 27, 2007
Loan Number: 81284

## ITEMIZATION OF AMOUNT FINANCED

| RESPA Statement | | |
|---|---|---|
| | Amount given to you directly | $ |
| | Amount paid on your account | |
| 1001 | Insurance Reserves | 178.50 |
| 1004 | Tax Reserves | |
| | Other Reserves | 1,168.10 |
| 1009 | Aggregate Adjustment | |
| | Amount paid to others on your behalf | |
| 803 | Appraisal Fee | |
| 804 | Credit Reporting Fee to: CRA | 18.00 |
| 903 | Hazard Insurance Premium | |
| 808 | Document Preparation Fee to: WESTLEND FINANCING, INC., | 195.00 |
| 1106 | Notary Fee | |
| 1108 | Title Ins. Premium to: TICOR TITLE COMPANY | 1,150.00 |
| 1201 | Recording Fee to: Other | 150.00 |
| | APPRAISAL REVIEW FEE to: WESTLEND FINANCING, INC., DA | 100.00 |

Loan Proceeds to: TICOR TITLE COMPANY                                          $287,235.77
YIELD SPREAD PREMIUM to: CRA (375%) (p.o.c.) $1,147.50

■ AMOUNT FINANCED       $ 290,195.37
■ Prepaid Finance Charge  $  15,804.63

■ Loan Amount   $ 306,000.00

■ Itemization of Prepaid Finance Charge:

| 801 | Loan Origination Fee to: CRA | $ 10,710.00 |
|---|---|---|
| | Loan Discount Fee | |
| 806 | Tax Service Fee to: WESTLEND FINANCING, | 79.00 |
| | Prepaid Interest ( 30 days) | |
| 901 | @ 6.375 % per annum | 1,625.63 |
| 902 | Mtge. Ins. Premium | |
| | Mtge. Ins. Reserves | |
| 808 | Origination Fee | |
| 1002 | CLOSING FEE to: NORTH HILLS ESCROW | 785.00 |
| | FLOOD CERTIFICATION to: WESTLEND FINANCING, | 20.00 |
| | FUNDING FEE to: WESTLEND FINANCING, INC., DA | 150.00 |
| | UNDERWRITING FEE to: WESTLEND FINANCING, INC., | 50.00 |
| | WIRE FEE to: WESTLEND FINANCING, INC., DA | 495.00 |
| | PROCESSING FEE to: CRA | 995.00 |
| | ADMINISTRATION FEE to: CRA | 895.00 |

This form does not cover all items you will be required to pay in cash at settlement, for example, deposits in escrow for real estate taxes and insurance may be different. You may wish to inquire as to the amounts of such other items. You may be required to pay other additional amounts to be settled.

All disclosures are estimates.

# EXHIBIT "G"



**This page is part of your document - DO NOT DISCARD**

 **20072724790**

Pages:
017

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/12/07 AT 08:00AM**

Fee: 58.00
Tax: 0.00
Other: 0.00
_____
Total: 58.00

Title Company

**TITLE(S) :** _____



Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

**TICOR TITLE CO**
**GLENDALE**



12/12/07

**20072724790**

Recording Requested By
WESTLEND FINANCING, INC., DBA
AMERICAN CAPITAL FUNDING

And After Recording Return To:
WESTLEND FINANCING, INC., DBA
AMERICAN CAPITAL FUNDING
15400 SHERMAN WAY, #292
VAN NUYS, CALIFORNIA 91406
Loan Number: 81284

9764614 ———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

MIN: 1001951-0000081284-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated   NOVEMBER 27, 2007   , together with all Riders to this document
(B) "Borrower" is  MARIA ANTONIA RAFAEL, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  WESTLEND FINANCING, INC., DBA AMERICAN CAPITAL FUNDING .                                                                    organized
Lender is a  CALIFORNIA CORPORATION
and existing under the laws of  CALIFORNIA
Lender's address is  15400 SHERMAN WAY, #292, VAN NUYS, CALIFORNIA 91406

(D) "Trustee" is  TICOR TITLE COMPANY
500 N. CENTRAL AVE #500, GLENDALE, CALIFORNIA 91203

(E) "MERS" is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O. Box 2026, Flint, MI 48501-2026. tel. (888) 679-MERS
(F) "Note" means the promissory note signed by Borrower and dated NOVEMBER 27, 2007
The Note states that Borrower owes Lender  THREE HUNDRED SIX THOUSAND AND 00/100
Dollars (U S $  306,000.00 ) plus interest

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 1 of 14

DocMagic *eForms* 800 649 1362
www docmagic com

Cs3005 mzd

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 1, 2038

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable].

☐ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Balloon Rider                  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Second Home Rider
☐ Condominium Rider              ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C §2601 et seq ) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's

4

covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the LOS ANGELES
COUNTY                                    of
[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 2640-013-011

which currently has the address of 8957 GREENBUSH AVENUE
                                                          [Street]

(ARLETA AREA) LOS ANGELES        , California    91331       ("Property Address"):
                        [City]                                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U S currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 3 of 14

DocMagic ℰℱℴʳᵐˢ 800 649 1362
www.docmagic.com

( a3005 mzd)

5

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 5 of 14

DocMagic *eFirmas* 800 649 1362
www.docmagic.com

Cs3005.mzd

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender   Lender may make proof of loss if not made promptly by Borrower   Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim   The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6   Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property   Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition   Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property   If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease  If Borrower Borrower shall not, without the express written consent of Lender, alter or amend the ground lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed  Borrower is not a party to the Mortgage Insurance

DocMagic €Ферман 800 649 1362
www.docmagic.com

Ca3005 mzd

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

DocMagic *800 649 1362*
www.docmagic.com

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

DocMagic @Forms 800 649 1362
www docmagic com

otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract  In the event that any provision or clause of this Security Instrument or the Note which conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender. (a) cash. (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01

Page 10 of 14

DocMagic @Feature 800 649 1362
www.docmagic.com

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.**  As used in this Section 21·  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows
**22. Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise)  The notice shall specify. (a) the default, (b) the action

DocMagic *eFormus* 800 649 1362
www.docmagic.com

Ca3005 mzd

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DocMagic *eFarms* 800 649 1362
www.docmagic.com

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above  A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request  If the Borrower's address changes, a new request must be recorded

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

_____ (Seal)                      _____ (Seal)
MARIA ANTONIA RAFAEL         -Borrower                                                   -Borrower

_____ (Seal)                      _____ (Seal)
                             -Borrower                                                   -Borrower

_____ (Seal)                      _____ (Seal)
                             -Borrower                                                   -Borrower

Witness                                               Witness

_____                            _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic @Forms 800 649 1362
Form 3005 01/01                                Page 13 of 14                                www.docmagic.com

[Space Below This Line For Acknowledgment]

State of California )
)  ss.
County of LOS ANGELES )

On *Nov. 30, 2007* before me, ISABEL CABRERA NOTARY PUBLIC

personally appeared MARIA ANTONIA RAFAEL

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

ISABEL CABRERA
Commission # 1608252
Notary Public - California
Los Angeles County
My Comm. Expires Oct 18, 2009

*Isabel Cabrera*
NOTARY SIGNATURE

ISABEL CABRERA
(Typed Name of Notary)

NOTARY SEAL

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 14 of 14
DocMagic eForms 800 649 1362
www.docmagic.com

Loan Number. 81284

Date. NOVEMBER 27, 2007

Property Address   8957 GREENBUSH AVENUE, (ARLETA AREA) LOS ANGELES,
CALIFORNIA 91331

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 2640-013-011

DocMagic (800 649 1362
www.docmagic.com

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 221, OF TRACT NO. 17356, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 418 PAGES 12 TO 16 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

# EXHIBIT "H"



## TERMS AND CONDITIONS

1. MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request.   The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party. The Member shall be bound by any amendment to any of the Governing Documents.

2. The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3. MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes. In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS.

4. No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5. If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6. MERS and the Member agree that:  (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7. If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS.  The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member.  The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8. The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time. The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time.  MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9. MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim").  Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

VC10052000VA

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures. The Member shall promptly notify MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond. MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS. The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby. Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for and be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial owner unless otherwise requested by the beneficial owner.

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1818 Library Street, Suite 300, Reston, VA 20190.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute"), before such party has sought to resolve the Dispute through direct negotiation with the other party. If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation. If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held in Washington, D.C. If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph. The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

In the event that the Member and MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.

# EXHIBIT "I"

This page is part of your document - DO NOT DISCARD



# 20101158973



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/19/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201008190200016

00002834076



002841397

**SEQ:**
**05**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

06/19/2010

*20101158973*

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO
MTC FINANCIAL Inc dba Trustee Corps
30 Corporate Park, Suite 400
Irvine , CA 92606

APN 2640-013-011

Trustee Sale No.CA05001158-10-1 .   Loan No 1010793881

Space above this line for recorder's use only
Title Order No. 100289174-CA-GTI

## SUBSTITUTION OF TRUSTEE

WHEREAS, MARIA ANTONIA RAFAEL, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, was the original Trustor, TICOR TITLE COMPANY, was the original Trustee, and WESTLEND FINANCING, INC., DBA AMERICAN CAPITAL FUNDING, was the original Lender and Mortgage Electronic Registration Systems Inc. as the original Beneficiary under that certain Deed of Trust dated 11/27/2007 and Recorded on 12/12/2007 as Instrument No. 20072724790 of official records in the Office of the Recorder of Los Angeles County, California.

WHEREAS, the undersigned, the current beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided,

Now, THEREFORE, the undersigned hereby substitutes MTC FINANCIAL Inc dba Trustee Corps, whose address is 30 Corporate Park, Suite 400, Irvine , CA 92606, as Trustee under said Deed of Trust.

DATE: 05/12/2010

ONEWEST BANK, F.S.B.

By: _____   Assistant Vice President
        Brian Burnett

STATE OF: Texas
COUNTY OF: Travis
On  6.10.10  before me,  Ame Rivera  , Notary Public, personally appeared
Brian Burnett   who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____Texas_____ that the
foregoing paragraph is true and correct.
WITNESS my hand and official seal.

_____
Notary Signature

AME RIVERA
MY COMMISSION EXPIRES
March 11, 2014

EXHIBIT "J"

This page is part of your document - DO NOT DISCARD

# 20100667464

 

**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/17/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201005170150006

00002372624



002684871

**SEQ:**
**12**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T35

E454700

APN 2640-013-011

Recording Requested By
LSI Title Company
and When Recorded Mail to

05/17/2010

*20100667464*

MTC FINANCIAL Inc dba Trustee Corps
30 Corporate Park, Suite 400
Irvine, CA  92606

Trustee Sale No. CA05001158-10-1
Loan No  1010793881      Title Order No: 100289174-CA-GTI

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $12,136 20 as of May 12, 2010, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact :

ONEWEST BANK, F.S.B.
c/o MTC FINANCIAL Inc dba Trustee Corps
30 Corporate Park, Suite 400
Irvine, CA 92606
Phone: 949-252-8300 REF# CA05001158-10-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

## NOTICE IS HEREBY GIVEN THAT:

Default has been declared under a Deed of Trust dated as of November 27, 2007, executed by MARIA ANTONIA RAFAEL, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as trustor, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, as Beneficiary and WESTLEND FINANCING, INC., DBA AMERICAN CAPITAL FUNDING as lender under Deed of Trust recorded December 12, 2007, as Instrument No. 20072724790 of the Official Records in the office of the Recorder of Los Angeles County, California, and is subject to the terms and conditions contained therein and that the payment has not been made of· THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 01/01/2010 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS FORECLOSURE COSTS AND LEGAL FEES.

The Deed of Trust encumbers certain property more particularly described therein (the "Trust Property"), and that failed to pay payments which became due;.

The Deed of Trust secures the payment of and the performance of certain obligations, including but not limited to, the obligations set forth in a promissory note(s) with a face amount of $306,000.00, and that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the trustor has failed to perform obligations pursuant to or under the Note and/or the Deed of Trust, specifically: failed to pay payments which became due; and that by reason thereof, the present beneficiary under such Deed of Trust, has delivered to TRUSTEE CORPS said Trustee a Declaration and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the Trust Property to be sold to satisfy the obligations secured thereby.

The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(c) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code § 2923.5.

Date. May 14, 2010
MTC FINANCIAL Inc dba Trustee Corps as Agent for the Beneficiary
By: LSI Title Company, as Agent

By: Anselmo Pagkaliwangan Authorized Agent

TRUSTEE CORPS IS A DEBT COLLECTOR  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

MARIA RAFAEL

## DECLARATION PURSUANT TO CAL. CIV. CODE SECTION 2923.5(b):

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☒     The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☐     The mortgagee, beneficiary or authorized agent has tried with due diligence to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐     The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

     ☐     the borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

     ☐     the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

     ☐     the borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

                         INDYMAC MORTGAGE SERVICING

Date: 3/4/2010          By: _Jenn Crespo_____

EXHIBIT "K"



This page is part of your document - DO NOT DISCARD

# 20101158974





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/19/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201008190200016

00002834077



002841397

SEQ:
06

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



t35



When Recorded Mail To:

Trustee Corps
30 Corporate Park, Suite 400
Irvine, CA 92606

---

Trustee Sale No. CA05001158-10-1 .  Loan No. 1010793881          Title Order No. 100289174-CA-GTI

APN 2640-013-011

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED November 27, 2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On September 13, 2010, at 10:30 AM, At the front entrance to the Pomona Superior Courts Building, 350 West Mission Blvd., Pomona, CA, MTC FINANCIAL Inc dba Trustee Corps, as the duly appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded on December 12, 2007, as Instrument No. 20072724790 of Official Records in the office of the Recorder of Los Angeles County, CA , executed by: MARIA ANTONIA RAFAEL, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, in favor of ONEWEST BANK, F.S B, as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as

AS MORE FULLY DESCRIBED ON SAID DEED OF TRUST.

The property heretofore described is being sold "as is".  The street address and other common designation, if any, of the real property described above is purported to be:

8957 GREENBUSH AVENUE, (ARLETA AREA) LOS ANGELES, CA 91331

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest theron, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $310,994.56 (Estimated), provided, however, prepayment premiums, accrued interest and advances will increase this figure prior to sale.  Beneficiary's bid at said sale may include all or part of said amount.  In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

3

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.

DATE: August 19, 2010
MTC FINANCIAL INC dba Trustee Corps
TS No. CA05001158-10-1 .
30 Corporate Park, Suite 400
Irvine, CA 92606
949-252-8300

Clarisa Gastelum,  Authorized Signature

SALE INFORMATION CAN BE OBTAINED ON LINE AT www.priorityposting.com
AUTOMATED SALES INFORMATION PLEASE CALL 714-573-1965

Compliance with California Civil Code Section 2924f: The Beneficiary or Beneficiary's agent has indicated that the requirements of California Civil Code Section 2924f have been met.

Regarding the property that is the subject of this notice of sale, the "mortgage loan servicer" as defined in Civil Code § 2923 53(k)(3) declares that it has obtained from the Commissioner a final or temporary order of exemption pursuant to Civil Code section 2923.53 that is current and valid on the date this notice of sale is recorded.  The time frame for giving a notice of sale specified in Civil Code Section 2923 52 subdivision (a) does not apply to this notice of sale pursuant to Civil Code Sections 2923 52

Clarisa Gastelum,    Authorized Signature

TRUSTEE CORPS IS A DEBT COLLECTOR  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# EXHIBIT "L"

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

This page is part of your document - DO NOT DISCARD



## 20101391682



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

09/30/10 AT 08:00AM

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201009300270004

00003047154



002914167

SEQ:
09

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED          t35

EHR91

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

[RECORDING REQUESTED BY:]

LSI Title Company, as Agent
on Behalf of Trustee Corps

[WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO:]

**FEDERAL NATIONAL MORTGAGE
ASSOCIATION**

888 E. Walnut Street

Pasadena, CA 91101



09/30/2010

*20101391682*

_____

[Space above this line for recorder's use only]

Trustee Sale No.CA05001158-10-1      Loan No. 1010793881    Title Order No. 100289174-CA-
GTI

# TRUSTEE'S DEED UPON SALE

The undersigned grantor declares:

1) The Grantee herein <u>was</u> the foreclosing beneficiary.

2) The amount of the unpaid debt together with costs was: **$315,014.73**

3) The amount paid by the grantee at the trustee sale was: **$315,014.73**

4) The documentary transfer tax is:                                          **$ 0.00**

5) Said property is in the city of:   (ARLETA AREA) LOS ANGELES

6) A.P.N. # 2640-013-011

and <u>MTC FINANCIAL, INC. dba TRUSTEE CORPS</u>, herein called "Trustee", as Trustee (or as Successor Trustee) of the Deed of Trust hereinafter described, hereby grants and conveys, but without covenant or warranty, express or implied, to **FEDERAL NATIONAL MORTGAGE ASSOCIATION**, herein called "Grantee", the real property in the County of <u>Los Angeles</u>, State of **California**, described as follows:

**SEE "EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

This deed is made pursuant to the authority and powers given to Trustee (or to Successor Trustee) by law and by that certain Deed of Trust dated November 27, 2007, made to MARIA ANTONIA RAFAEL, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY and recorded on December 12, 2007, as Instrument No. 20072724790 of Official Records in the office of the Recorder of Los Angeles County, California, Trustee (or Successor Trustee) having complied with all applicable statutory provisions and having performed all of his duties under the said Deed of Trust.

FEDERAL NATIONAL MORTGAGE ASSOCIATION

888 E. Walnut Street

Pasadena, CA 91101

CORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

9A

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

3

All requirements of law and of said Deed of Trust relating to this sale and to notice thereof having been complied with. Pursuant to the Notice of Trustee's Sale, the above described property was sold by Trustee (or Successor Trustee) at public auction on **09/13/2010** at the place specified in said Notice, to Grantee who was the highest bidder therefor, for **$315,014.73** cash, in lawful money of the United States, which has been paid.

Dated: 09/13/2010

**MTC FINANCIAL, INC. dba TRUSTEE CORPS**

______________________________
Ryan Newman
Trustee Sale Officer

State of **CALIFORNIA**

County of **ORANGE**

On 9.29-10 before me, Claudio Martinez, a notary public personally appeared Ryan Newman who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

______________________________
Notary Public in and for said County and State

CLAUDIO MARTINEZ
COMM. #1894620
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. JULY 4, 2014

"This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

3

All requirements of law and of said Deed of Trust relating to this sale and to notice thereof having been complied with. Pursuant to the Notice of Trustee's Sale, the above described property was sold by Trustee (or Successor Trustee) at public auction on **09/13/2010** at the place specified in said Notice, to Grantee who was the highest bidder therefor, for **$315,014.73** cash, in lawful money of the United States, which has been paid.

Dated: 09/13/2010
MTC FINANCIAL, INC. dba TRUSTEE CORPS

Ryan Newman
Trustee Sale Officer

State of **CALIFORNIA**

County of **ORANGE**                                    Claudio Martinez

On ___9.29-10___ before me, _____ a notary public personally appeared ___Ryan Newman___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public in and for said County and State

CLAUDIO MARTINEZ
COMM. #1894620
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. JULY 4, 2014

"This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"

CORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Trustee Sale No.CA05001158-10-1 .    Loan No. 1010793881  Title Order No. 100289174-CA-GTI

# EXHIBIT A

LOT 221, OF TRACT NO. 17356, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 418 PAGES 12 TO 16 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV11- 301 RGK (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** 312 N. Spring St., Rm. G-8 Los Angeles, CA 90012 | [ ] **Southern Division** 411 West Fourth St., Rm. 1-053 Santa Ana, CA 92701-4516 | [ ] **Eastern Division** 3470 Twelfth St., Rm. 134 Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY